## HILL *et al. v.* TERRELL.

1. Where a testator bequeathed property to his grandchildren, children of his daughter, and declared, "It is also my will, desire, and intention, that if either of my daughter's children should depart this life after marriage, and should die without leaving any child or children at the time of his or her death, that his or her share of all or any part of the property, or the proceeds thereof, in whatever the same may be invested, herein devised or bequeathed by this will or any clause thereof, shall revert to and be equally divided between her surviving children and their legal representatives," this created in a grandchild of the testator an estate in fee, subject to be terminated or divested-if, after marriage, such grandchild should die without leaving any child or children at the time of her death.

2. A child of a grandchild of the testator took no estate in remainder under the provision of the will above quoted.

3. Construing such provision of the will in connection with its context, and with the entire will, there is nothing to change the construction just announced.

4. No estoppel was pleaded, nor is there any distinct ruling of the trial court on that subject ; nor do the facts alleged in the petition as to a mistake in the receipt given to the executor by the plaintiff, as guardian for his child, show that any estoppel existed.

Argued April 24, — Decided May 13, 1905.

Equitable petition. Before Judge Freeman. Meriwether superior court. September 6, 1904.

On June 5, 1879, Hon. Hiram Warner executed his will. It was probated in August, 1881. In 1904 E. B. Terrell filed his equitable petition, making Hiram Warner Hill, as executor of the deceased, and Kittie Hill Terrell parties defendant, and alleging in brief as follows : Kittie Hill was the granddaughter of the testator, being the daughter of his daughter, Mary J. Hill. On December 26, 1892, she and E. B. Terrell, the plaintiff, intermarried. On July 17, 1898, a daughter, Kittie Hill Terrell, was born to them, and shortly thereafter Mrs. Terrell died. Kittie Hill reached the age of twenty-one before she intermarried with the

plaintiff. Her estimated share of the fund mentioned in the 5th item of the testator's will approximated $25,000. She permitted this, however, to remain in the hands of her brother, the sole acting executor, as long as she lived. A few months after the death of Mrs. Terrell this share was turned over to her husband, the plaintiff, as natural guardian for his child, Kittie Hill Terrell, and a receipt was given to the executor, in which it was stated that the minor child was entitled to the share of her mother as remainderman under the will of the testator, and which contained the following clauses: "And I, E. B. Terrell, father and guardian of Kittie Hill Terrell, as aforesaid, have received of H. W. Hill, executor of the last will and testament of Hiram Warner, deceased, the following bonds and money, being all that is in his hands for distribution under said will of Hiram Warner, deceased, belonging to my said ward, Kittie Hill Terrell, to wit, $23,500.00 in bonds, and $219.00 in cash." The petition proceeds: "Your petitioner avers that at the time he executed the aforesaid receipt he had no idea that he himself had any interest in the fund which his said wife had left at her death, but believed the same belonged entirely to his minor child, the said Kittie Hill Terrell, and he was induced so to believe by the unlimited confidence which he placed in the statement of the said Hiram Warner Hill, whom petitioner knew to be his friend, who was the executor of his grandfather, and was withal a very able and distinguished lawyer. Relying upon the statement of said executor, he executed the receipt aforesaid, presented to him by and in the handwriting of the executor. . . Your petitioner has never for one moment believed that said H. W. Hill, executor as aforesaid, in the statement he made to petitioner was guilty of any intended artifice or deception or fraudulent practice; on the contrary, he thinks the executor was honestly mistaken as to the true construction of his testator's will, relying possibly upon the popular opinion entertained that no one would ever enjoy any of testator's property who was not of his blood, rather than upon a critical examination of the provisions of said will." He gave a bond as guardian of his daughter, and was not aware that he had any interest in the estate until very recently, when in a conversation with a friend it was suggested to him; and upon having the will carefully examined by counsel, he reached the conclusion that

the share of his wife vested in her absolutely, and that upon her death he and their minor child inherited this share equally, instead of it passing entirely to the child. He contended that the turning over of this share to him as guardian, and the giving of the receipt above stated, resulted from a mistake; and he prayed that it be decreed, that his wife, Kittie Hill Terrell, was the owner in fee of her share of the fund bequeathed by her grandfather, Hon. Hiram Warner, deceased, in the fifth item of his will; that, she having died intestate, he and their minor child, Kittie Hill Terrell, inherited such share equally; and that the receipt given to the executor be delivered up to be canceled; and that in its place two other receipts should be executed by him, one individually, and the other as natural guardian for his child, each for an undivided half interest.

The executor in his answer insisted that under a proper construction of the will of the testator, the share going to the testator's granddaughter, Kittie Hill (afterwards Mrs. Terrell), under the fifth and tenth items of the will, did not pass to her absolutely, or in fee, but that by those items a life-estate in her was created, with a remainder to her child, and therefore her child was entitled to the estate, and her husband took no interest; and that the receipt given by the plaintiff as guardian was properly given and should not be canceled. The defendant further alleged that the testator had but one child, Mrs. Mary J. Hill; that she married A. F. Hill, who was living at the time of the execution of the will (she living with him); and that the son-in-law was not a legatee under the will, and not mentioned in it.

The will contained eleven items. The first directed the payment of the testator's debts, and the erection of a suitable monument over his grave. The second bequeathed to his grandson, Hiram Warner Hill, his gold watch and library. The third bequeathed to his grandson, Burwell O. Hill, his horse and buggy, and such other horses, mules, wagons, and plantation tools as he might have at the time of his death. The fourth bequeathed to his daughter, Mary J. Hill, $1,000, to dispose of absolutely as she pleased. The remaining items were as follows:

"Fifth. It is my will and desire that after the payment of the specific legacies hereinbefore enumerated, and expenses of administration, including the expenses of erecting a suitable monument

as specified in the first item of this will, that all money remaining on hand, if any, and all that may be due me by notes, bonds, or other evidences of debt, shall be invested, by my executors herein-after named, in bonds of the State of Georgia, or bonds of the United States, or in safe and solvent railroad bonds of this State, or in mortgages upon unincumbered real estate with waiver of home-stead, drawing interest, for the benefit of the children of my daughter, Mary J. Hill,—that is to say, the principal and the annual or semiannual interest accruing thereon (if not already invested at the time of my death) shall be so invested for the benefit of the children my said daughter now has, or may hereafter have born, share and share alike, in the following manner, that is to say, when-ever any one of her children shall arrive at the age of twenty-one years or marries, then he or she shall receive his or her share of said fund at that time, and the balance thereof continue to be invested, drawing interest for the benefit of the others. It being my desire and intention that this fund shall be invested as before directed, with the annual and semiannual interest accruing thereon, for the benefit of all my daughter's children, and that their respective shares thereof be paid to them as they shall respectively come of age or marry, each one's share to be estimated at the time of the payment thereof, and in the event any of her children should die before marriage or arriving at the age of twenty-one years, his or her share of said fund is to be equally divided between her surviving children or their legal representatives, to wit, her grandchildren, provided any of her children should die leaving children. It is also my will, desire, and intention, that if either of my daughter's children should depart this life after marriage, and should die without leaving any child or children at the time of his or her death, that his or her share of all or any part of the property, or the proceeds thereof, in whatever the same may be invested, herein devised or bequeathed by this will or any clause thereof, shall revert to and be equally divided between her surviving children and their legal representatives; and my executors are hereby directed to take a receipt from each legatee to that effect.

"Sixth. I direct that the lot of land owned by me in Gilmer county and the lot of land owned by me in the 11th district of Meriwether county be sold by my executors, and the proceeds thereof be invested for the benefit of my daughter's children, as hereinbefore specified in the fifth item of this will.

"Seventh. In the execution of my will and desire, I do hereby devise and bequeath all of the residue and remainder of my estate, not otherwise disposed of by this will, to my daughter, Mary Jane Hill, for her sole and separate use, during her natural life, and at her death to be equally divided among her children living at the time of her death and their legal representatives; the share or portion of her female children is expressly devised and bequeathed to them for their sole and separate use and benefit. It is to be expressly understood, and such is my declared wish, will, and intention, that the life-estate in my lands hereby devised to my daughter is not to be so managed or cultivated as to injure or prejudice the rights or interest of her children as remaindermen, but that the same shall be cultivated and managed prudently and discreetly during her life, without waste or injury to the corpus of the property, but, so far as it is possible to do so, to improve it for the benefit of her children, who I intend shall have the benefit of it after her death; and this devise of my land during her life is made upon that express condition. It is also my intention, as to this clause of my will, that if at the time of my daughter's death any of her children shall have died leaving children, that the latter shall represent their deceased father or mother and take the share or portion which he or she would have been entitled to if living at the time of my daughter's death.

"Eighth. If at any time before my death I should advance either of my daughter's children by giving them money or property, such advancement is to be deducted from his or her share of my estate on a division thereof.

"Ninth. If I should own any town or city property at the time of my death, then it is my will and desire that the same shall be sold by my executors at public sale and the proceeds thereof be invested for the benefit of my aforesaid grandchildren, in the same manner and for the same purposes expressed in the 5th item of this my will.

"Tenth. It is my will and desire and I do hereby direct that the legal title to all and singular the property devised and bequeathed to my female grandchildren by this will or any clause thereof shall be vested in my executors in trust for my female grandchildren, that is to say, my said executors are to hold and have vested in them the legal title to the corpus of the property

devised and bequeathed to my female grandchildren as aforesaid, in trust for their use and benefit and for their protection, and are to pay to them annually the interest or income of their respective shares thereof, when they shall arrive at twenty-one years or marry, taking their separate receipts therefor.

"Eleventh. Believing myself competent to dispose of my worldly effects by will, I have done so, and hope that the courts of the country will see to it that it is executed in accordance with my expressed intentions, and not after my death be passing orders at the instance of interested parties to alter and change the directions contained in my will, as is sometimes done under one pretext or another. Lastly, I nominate and appoint my brother, Obadiah Warner, and my grandsons, Burwell O. Hill and Hiram Warner Hill, as executors of this my last will and testament, and hereby charge them and each of them with the faithful execution thereof according to its true intent and meaning as hereinbefore expressed.

In testimony whereof I have hereunto set my hand and seal to the foregoing annexed seven written pages. This 5th day of June, 1879. [Interlined before signing, with different ink.]"

The case was, by consent, submitted to the presiding judge without a jury. He held, that "Kittie Hill Terrell, wife of the petitioner, E. B. Terrell, in the property referred to . . under the 5th item of the will of her grandfather, Hiram Warner, deceased, take an estate in fee, subject to be divested upon her dying without children. She having died leaving one child and her husband, the petitioner herein, they are entitled to said property in equal shares, as the heirs at law of the said Kittie Hill Terrell." He accordingly directed that the receipt which had been given the executor be delivered up for cancellation, and two receipts, one by E. B. Terrell individually, and the other by him as guardian of his minor child, each for a half interest in the property, should be substituted therefor. The defendants excepted.

*H. W. Hill*, for plaintiffs in error. The will created an estate for life in Kitty Hill, with contingent remainder to her children, or, in default of her dying without children, to the other beneficiaries named: Civil Code, §§ 3083, 3085, 3086; 75 *Ga.* 548; 110 *Ga.* 762–4; 2 McCord (S. C.), 84–100, and cit.; 1 P. Wms. 667; 3 Atk. 397; Plow. Com. 414; T. Raym. 453; Cowp. 31; Id. 800; 3 Ves. 541; 2 Bl. Com. 381; 2 Fonb. 56; 1 Burr. 38. In-

tention of testator, cardinal rule of construction: Civil Code, § 3324; 116 *Ga.* 258; 115 *Ga.* 896; 75 *Ga.* 547; 72 *Ga.* 856, 859; 4 *Ga.* 464; 6 Wall. 478; 4 Ves. 329–30; 1 Redf. Wills, 136, 430, 435, 463.   Necessary implications: 2 McCord, 92–3; 75 *Ga.* 548; 3 Atk. 397; 2 Bl. Com. 381; 3 Burr, 1686; 2 Fonb. 56; 1 Chit. Pl. 241–2; 1 Saund. 259, n. 8; 2 Bos. & Pul. 155; 4 East, 453; 2 H. Bl. 530; Coke, Litt. 303 (b).   Executory trusts and contingent remainders: Civil Code, §3156; 92 *Ga.* 772, 775; 99 *Ga.* 444; 30 Ga. 453; Hill, Trus. 318, 328; 1 P. Wms. 128; 16 Ves. 302; 3 Atk. 754; 7 Bac. Abr., Uses and trusts; Fearne Con. Rem. 124; 6 Pet. 68, 76.   Estoppel: Ewart, Est. 3, 6; Bigelow, Est. 566, 574–5, 580; 96 U. S. 720.

*John W. Park, Orville A. Park,* and *S. W. Harris,* contra, cited Civil Code, § 3083; *Ga. R.* 30/638, 707; 46/247; 68/370; 81/120; 85/552; 102/181; 106/751; 113/210; 75/540; 12/156; 41/554; 47/455; 95/699; 110/707; 100/478; Redf. Wills, *432–3.

LUMPKIN, J.  This case presents some unusual features.  When the Supreme Court of Georgia was organized under the act of December 10, 1845, Honorable Hiram Warner was one of the three Judges first elected.  The second opinion which appears in the printed reports of this court (1 *Ga.* 5) bears his name.  For many years he was a member of the court, and for a long time presided as Chief Justice.  He took part in the construction of many wills; and now, after his death, his own will comes before this court for construction.  It is also somewhat an unusual fact that the petition states that it is based in part upon the opinion of another distinguished ex-Chief Justice, Honorable Logan E. Bleckley.

The controversy arises over the proper construction of the fifth item of the testator's will.  In it he provided, that after the payment of specific legacies and the expenses of administration, all the remaining money in hand, or that might be due him, should be invested by his executors in bonds or mortgages " for the benefit of the children my said daughter now has, or may hereafter have born, share and share alike;" that "whenever any one of her children shall arrive at the age of twenty-one years or marries, then he or she shall receive his or her share of said fund at that time, and the balance thereof continue to be invested, drawing in-

terest, for the benefit of the others;" that "in the event any of her children should die before marriage or arriving at the age of twenty-one years, his or her share of said fund is to be equally divided between her surviving children or their legal representatives, to wit, her grandchildren, provided any of her children should die leaving children." Then follow the words which especially require construction. They are as follows: "It is also my will, desire, and intention, that if either of my daughter's children should depart this life after marriage, and should die without leaving any child or children at the time of his or her death, that his or her share of all or any part of the property, or the proceeds thereof, in whatever the same may be invested, herein devised or bequeathed by this will or any clause thereof, shall revert to and be equally divided between her surviving children and their legal representatives; and my executors are hereby directed to take a receipt from each legatee to that effect." The plaintiff contends, that, under this item of the will, the granddaughter of the testator took an estate in fee, subject to be divested if she should die after marriage without leaving child or children; that she having a child at the time of her death, the condition upon which her estate might have been divested no longer existed; and that her estate being absolute at her death, her husband and child were entitled to share equally in the property so left by her. On the other hand, the defendant contends, that, under this item of the will, the testator created a life-estate in his granddaughter, Kittie Hill, with remainder to such children as she might have at the time of her death; that having only one child, the entire estate passed to it; and that her husband took nothing as heir of his wife.

It is clear that the estate bequeathed by the testator to his granddaughter was not expressly limited to a life-estate. Neither is there any express gift or bequest to the children which she might leave. The question, then, is narrowed to this: Did the testator intend such a limitation or remainder to arise by implication, and did the language employed by him create such a limitation or remainder over? Since 1821, it has been the law of this State that the word "heirs," or its equivalent, is not necessary to create an absolute estate; but every conveyance properly executed shall be construed to convey the fee, unless a less estate is

mentioned and limited in such conveyance.    Civil Code, § 3083. Provisions in wills similar to that now under consideration have been construed a number of times by this court.    In *Groce* v. *Rittenberry*, 14 *Ga.* 232, it was said:    "Where personal property was bequeathed to S. G., and if he should die without any child living at his death, then to the children of L. G. and J. A., and S. G. died leaving his wife *enceinte* with a child, which was afterwards born, and lived for some time, but subsequently departed this life:    Held, that such bequest was in the nature of an executory gift to the children of L. G. and J. A., to take effect upon the defeasance of the prior gift to S. G.    Held, also, that for the purposes of this bequest, the child, *en ventre sa mere*, was a child living at the death of its father, S. G."    In *Harris* v. *Smith*, 16 *Ga.* 545, is the following ruling:    "A testator gave real and personal estate to D. F. H., with the provision that if he should 'die leaving no lawful heirs, then, in that case, it is my will that all of the said property shall be divided, share and share alike, between the children of J. C. F.':    Held, that these words vested in D. F. H. an estate in fee, subject to an executory devise of the lands, and bequest of the personal property in favor of the children of J. C. F., if the said D. F. H. should die without children living at the time of his death."    In *Burton* v. *Black*, 30 *Ga.* 638, 644, a similar ruling is made, and the subject is fully discussed.    Stephens, J., says:    "An obvious restriction upon the principle of reasoning by inference is, that resort to it shall be had only in the absence of expressed intention;" and he holds, that a bequest to one and his heirs would not create a fee simple more effectually under our law than by being to him without the added words of inheritance, and that the only effect of providing that the estate should go to some other person if the first taker should die without children is to attach a condition to the fee in him which would terminate it if he should die without children.    A like construction has been placed upon similar bequests, in *Hill* v. *Alford*, 46 *Ga.* 247; *Gibson* v. *Hardaway*, 68 *Ga.* 370; *Matthews* v. *Hudson*, 81 *Ga.* 120; *Chewning* v. *Shumate*, 106 *Ga.* 751; *Davis* v. *Hollingsworth*, 113 *Ga.* 210; *Sumpter* v. *Carter*, 115 *Ga.* 893.    Thus this court has held, with great uniformity, that unless there be something to indicate a contrary intent on the part of the testator, a devise or bequest to a named person, followed by a provision

that if he shall die childless the property shall pass to some other person, conveys to him a fee, subject to be divested upon his dying childless, or, as it is sometimes called, a base or qualified fee, and does not confer upon any child which he may have any interest or estate in remainder in the property. Estates by implication are not favored. *McCord* v. *Whitehead,* 98 *Ga.* 385. In the harmony of these decisions there is but a single note of discord. In *Wetter* v. *United Hydraulic Cotton-Press Co.,* 75 *Ga.* 540, the words, "and should they two be survived by my said daughter, and she, my said daughter, subsequently die without issue, as aforesaid, then living, then it is my will that the whole of my estate vest in and belong to my own next of kin then living and their heirs forever," when construed in connection with the entire will and the circumstances surrounding the testatrix, created a remainder in favor of the children of her daughter, and did not invest her with a fee determinable upon dying without issue. In regard to this decision several things may properly be said. The opinion was written by Hon. Marshall J. Clarke, Judge of the superior court of the Atlanta circuit, presiding instead of Jackson, C. J., who was disqualified. He based his opinion in part upon the fact that the will was drawn without regard to technical rules. He said (p. 544), "It would be especially unjust to apply technical rules to an instrument manifestly drawn without reference to them. The will of Mrs. Cobb is a paper of this character." No such statement as this could be made in regard to the will of the ex-Chief Justice of this court, which was doubtless drawn by himself, and which evinces on its face great care and particularity to express his intention, and to leave nothing to implication. Moreover, the will which was under consideration in that case was probated in 1839, when the old law in regard to marital rights prevailed. That decision has been discussed and criticised in *Matthews* v. *Hudson,* 81 *Ga.* 126, supra; and if it can stand at all, it must be on its own peculiar facts. It was also delivered in 1885, some years after the death of Judge Warner, so that he could not have drawn his will with the ruling there made in view, or have been influenced in any respect by it.

In the case of *Hill* v. *Alford,* 46 *Ga.* 247, supra, Chief Justice Warner delivered the opinion of the court in 1872. The will then under consideration contained the following items: Item 5. "It

is my will, that, as my children should marry or become of age, my executor shall give off to such child such portion of my estate as he may think best, for the purpose of managing and controlling and deriving the profits or income to himself; but the title to such property shall not be divested from my estate, nor such child acquire any title to the same; but said property shall belong to my estate until the youngest child shall marry or become of age, and then shall be brought into the general fund, to be divided among all my children equally, share and share alike." Item 6. "My further will and desire is, that should all my children die, without leaving children at the time of their death, that all my property shall be made a poor-school fund of, to be placed under the control of the 'Inferior Court of Putnam County,'" etc. The testator died, leaving three sons, two of whom died, leaving no children, before Andrew, the youngest, became of age or married. The following extracts from the opinion of the Chief Justice will show how strong and clear were his views on the subject. "There is no ambiguity on the face of the testator's will, which would authorize the introduction of parol evidence to explain it; but the words thereof are to be construed according to their legal effect, and the intention of the testator must be derived from the plan, unambiguous words which he has employed in making his will. . . The estate of Andrew in the land under the will was not contingent upon his leaving children, as has been supposed, but was a vested fee, subject to be divested in the event he died without children. . . The fee which Andrew took in the land under the will was a qualified or base fee, because there was a qualification annexed thereto, to wit, that if he died without children it was to go over by way of executory devise to the Inferior Court of Putnam county. . . If there should be any doubt whether the devisee in this case took an absolute estate in the land at common law, there can be none under the provisions of the act of 1821, which declares that all devises of real property shall vest in the person to whom the same are made an absolute, unconditional fee-simple estate, unless it be otherwise expressed, and a less estate mentioned and limited in such devise. . . It was said, on the argument, that it was the intention of the testator that his grandchildren should take his property, in the event his sons died leaving children, but there

are no words in the testator's will which will authorize a court to say so; for, as it was said by this court in *Wright* vs. *Hicks*, 12 *Georgia Reports*, 156, 'Courts are not permitted to give effect to the will of a testator, contrary to the plain and obvious terms used by him, upon a *mere conjecture* as to his intention.'" The same learned jurist who announced this opinion left his own will a few years later. An examination of it will show that it was prepared with the utmost care to express all the intention which his testamentary scheme embraced. As already stated, there is no express limitation of a life-estate in his granddaughter, with remainder over to her child. If there were any such remainder at all, it would arise by implication. The testator knew the danger of entering into the realm of conjecture, as indicated by his opinion above quoted. Indeed, after carefully and exhaustively dealing with his entire testamentary scheme, he uses the following striking words: "Believing myself competent to dispose of my worldly effects by will, I have done so, and hope that the courts of the country will see to it that it is executed in accordance with my expressed intentions, and not after my death be passing orders at the instance of interested parties to alter and change the directions contained in my will, as is sometimes done under one pretext or another." In the last item of the will he again refers to his intent and meaning as "hereinbefore expressed." He was careful to ask that his will be executed in accordance with his *expressed* intentions. He evidently desired to guard against the possibility of acting upon "mere conjecture," to which he referred in his decision. He believed in expressed language rather than in implication. In *Carlton* v. *Price*, 10 *Ga.* 497, he said: "When the intention of testators and the laws of the land are in conflict, the latter must prevail."

In view of all these facts, we do not think that this provision in the will can be construed to have a different meaning from that which the testator himself had put upon a similar provision in another will, or that an estate in remainder by implication should be raised against his declared desire that the *expressed* intentions of his will should be carried out. Nor do we think that other provisions of the will or the context alter this construction. It will be noted that several times in the fifth item the testator uses the expression, "for the benefit of the children of my daughter;"

which does not indicate an intention to limit the bequest to such children to a life-estate. It was also provided, that whenever one of his daughter's children should arrive at the age of twenty-one years or marry, he or she should receive his or her share of the fund at that time. It was declared that, in the event any of the testator's grandchildren should die before marriage or arriving at twenty-one years of age, his or her share should be equally divided between the surviving grandchildren or their legal representatives (their children, if any). This, however, in no way conflicts with the fact that if one of the children arrived at twenty-one years of age, and married, and thereupon received his or her share, it should be in fee. The testator provided for both contingencies: first, in case of death before marriage or arriving at twenty-one years of age, the property should go as directed; and secondly, in case of death after marriage without leaving any child or children, a different disposition was made.

The use of the word "also" in the expression "it is also my will" does not create any remainder interest in favor of the children of the testator's grandchildren. This word not only has the meaning of "in like manner," or "likewise," but it has a further meaning of "in addition, besides, as well, further, too." Having made one provision in one contingency, he made an additional or further provision in another contingency.

The direction in the tenth item of the will, that the executors should hold the property devised to the testator's female grandchildren in trust for them does not operate to limit the interest of such grandchildren to a life-estate, or to create an estate in remainder for their children.

Construing the fifth item of this will alone, or in connection with the entire will, we are of the opinion that the estate created in favor of the testator's granddaughter, Kittie Hill, was an estate in fee, subject to be divested or terminated upon her dying without child or children at the time of her death; and that it did not create any estate in remainder in favor of her child. It follows that upon Mrs. Terrell's death intestate, after marriage, leaving a child, this share passed as any other fee-simple estate left by her.

2. It does not appear that any estoppel was pleaded, and it is doubtful if that question is sufficiently made to require adjudication. But if the allegations of the petition be taken as true, the

plaintiff does not appear to be estopped by reason of a mere mistake in receipting to the executor.

*Judgment affirmed. All the Justices concur, except Candler, J., absent.*